KAPLAN FOX & KILSHEIMER LLP
WILLIAM J. PINILIS
160 Morris Street
Morristown, NJ 07960
Telephone: 973-656-0222
Facsimile: 973-401-1114

KAPLAN FOX & KILSHEIMER LLP
LAURENCE D. KING
LINDA M. FONG
MARIO M. CHOI
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VALERIE DONOHUE on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> COLGATE-PALMOLIVE COMPANY, a Delaware corporation, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Valerie Donohue ("Plaintiff") on behalf of herself, and all others similarly situated, brings this action against defendant Colgate-Palmolive Company ("Colgate" or "Defendant") for compensatory, equitable, injunctive and declaratory relief.  This action arises from Colgate's deceptive, fraudulent, and otherwise improper advertising, sales and marketing of Softsoap Antibacterial hand soaps ("Softsoap Antibacterial"). Plaintiff makes the following allegations based upon knowledge as to her own acts, and upon information and belief, as well as upon her attorneys' investigation, and alleges as follows:

## INTRODUCTION

1.      This action is brought on behalf of all New Jersey residents who purchased Softsoap Antibacterial within the applicable statutory limitations period.

2.      Through its extensive and comprehensive marketing campaign, Colgate claims, among other things, that Softsoap Antibacterial is "clinically proven to eliminate 99% of the germs your family encounters," is "America's most trusted [antibacterial] hand soap" and "kills 99% of germs" when, in actuality, it does not, a fact which Colgate knew and purposely misrepresented and failed to disclose to consumers.  To this day, Colgate has taken no meaningful steps to clear up consumer misconceptions regarding Softsoap Antibacterial.

3.      Since the introduction of Softsoap Antibacterial, Colgate's nationwide advertising campaign for Softsoap Antibacterial has been extensive, and Colgate has spent a significant amount of money to directly convey these deceptive

1

messages to consumers throughout the state of New Jersey. Through this massive marketing campaign, Colgate has conveyed one message: Softsoap Antibacterial performs better than regular soap and water. Each person who has purchased Softsoap Antibacterial has been exposed to Colgate's deceptive advertising message and purchased Softsoap Antibacterial as a result of that advertising and paid a premium for the product.

4.     Colgate's claims are deceptive and misleading, designed solely to induce consumers to buy Softsoap Antibacterial. Triclosan is the active ingredient in Softsoap Antibacterial. No reliable studies exist that demonstrate Triclosan provides any of the results promised by Colgate, or in other words, that it provides a benefit over washing with regular soap and water, and Colgate has no substantiation for the claims it makes regarding Softsoap Antibacterial as it relates to washing with regular soap and water.

5.     As a consequence of Colgate's unfair and deceptive practices, Plaintiff and members of the class have purchased Softsoap Antibacterial under the false impression that the product provides a benefit over washing with regular soap and water. Each consumer has been exposed to the same material misrepresentations and/or omissions which are prominently displayed on the product packaging for Softsoap Antibacterial, and in its advertising, prior to purchasing the product.

6.     As a result of Colgate's misrepresentations and/or omissions regarding Softsoap Antibacterial, Plaintiff and class members substantially overpaid for the soap because the value of the product was diminished at the time it was sold to consumers.  Had Plaintiff and class members been made aware that Softsoap Antibacterial provides no benefit over washing with regular soap and water, contrary to what was represented, they would not have purchased Softsoap Antibacterial or would have paid less for it.

7.     As a result of Defendant's conduct, Plaintiff and the class have been economically injured due to the purchase of Softsoap Antibacterial.

## PARTIES

8.     Plaintiff Valerie Donohue is a resident of Marlton, New Jersey.  Since in or about 2006 Ms. Donohue has purchased numerous bottles of Softsoap Antibacterial to use in her kitchen because she was concerned about salmonella when she cooks.  Ms. Donohue would not have purchased the Softsoap Antibacterial had she known that despite Defendant's representations to the contrary, the product is not any more effective than ordinary and less expensive liquid hand soap.

9.     Defendant Colgate-Palmolive Company, a Delaware corporation headquartered in New York, New York, is a $15.6 billion global company serving people in more than 200 countries and territories with consumer products in its core businesses − Oral Care, Personal Care, Home Care and Pet Nutrition. In

3

public filings, the company describes itself as "a leader in many product categories of the Personal Care market" including "shower gels, shampoos, conditioners, bar soaps, deodorants and antiperspirants, as well as liquid hand soaps in which we are the market leader in the U.S." "These products are marketed under the Palmolive, Speed Stick and Lady Speed Stick and Softsoap brands."

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than the Defendant. *See* 28 U.S.C. §1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367. This Court has personal jurisdiction over Defendant because it is authorized to do business and to conduct business in New Jersey, it has specifically marketed and sold the Softsoap Antibacterial in New Jersey, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

11.     Venue in this Court is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims asserted herein occurred in this District and Colgate is subject to personal jurisdiction to the federal court in

this District. Moreover, Colgate inhabits and/or may be found in this judicial district and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

## SUBSTANTIVE ALLEGATIONS

### The Ingredient

12.     Softsoap Antibacterial contains "Triclosan 0.115%"[1] as its active "antibacterial" ingredient. Triclosan was originally developed as a pesticide and was later used as a surgical scrub for medical professionals. In recent years, it has been added to many consumer products such as soaps, toothpastes, cosmetics, facewash, textiles, kitchenware, furniture, and toys. On the other hand, ordinary soaps do not contain Triclosan.

13.     Triclosan is a chlorophenol, a class of chemicals which is suspected of causing cancer in humans, and specifically believed to be an endocrine disruptor that may interfere with thyroid hormone function. While companies that manufacture products containing Triclosan claim that it is safe, the Environmental Protection Agency (EPA) has registered it as a pesticide. The EPA considers Triclosan as both a human health risk and as an environmental risk.

---

[1]     Other Softsoap products, such as Softsoap Foaming Hand Soap Aquatic Soap, and Softsoap Antibacterial Hand Soap Refill, contain "Triclosan 0.15%."

14.     Triclosan has already been banned or restricted in other countries, including the European Union.  In addition, some countries, including but not limited to, Canada, Norway, Germany, Denmark, Sweden, Finland and Japan, have either restricted, required warning labels, or advised consumers against use of products containing Triclosan.

**The Product and Advertising**

15.     Defendant's misleading marketing campaign begins with a deceptive name − Softsoap *Antibacterial* − as it implies that it will destroy more bacteria than ordinary hand soap.  Defendant's exhaustive advertising campaign builds on this deception.  In truth, Defendant has no competent and reliable support for these claims.

16.     Throughout the class period defined below, Colgate has deceptively and unfairly promoted Softsoap Antibacterial to consumers as having different special health benefits than ordinary liquid hand soap, including, but not limited to, being clinically proven to eliminate 99% of the germs your family encounters, and that it is dermatologist tested.

17.     Colgate repeats its false and deceptive representations of greater effectiveness than ordinary liquid hand soap on the packaging for Softsoap Antibacterial, by prominently indicating that Softsoap Antibacterial "eliminates 99% of germs," "clinically proven to eliminate 99% of the germs your family

encounters," and "wash[es] away the germs."  Examples of Softsoap

Antibacterial's packaging and labeling follow:







9



18.    Colgate further repeats its false and deceptive claims regarding

Softsoap Antibacterial on its webpage for Softsoap Antibacterial.[2]  Colgate has

promoted its Softsoap Antibacterial on its websites by stating, for example:

- Clinically proven to eliminate 99% of the germs your family encounters

- Offers antibacterial protection

- Proven to eliminate germs and tough dirt

- Offers antibacterial protection against germs

- Antibacterial formula is proven to eliminate tough dirt and germs

_____

[2]    *See e.g.*
http://web.archive.org/web/20100111030641/http://www.colgate.com/app/Softsoap/US/EN/LiquidHandSoap/Antibacterial.cvsp.

10

19.     Furthermore, Colgate repeats these false and deceptive claims on its publicly accessible commercial products webpage for Softsoap Antibacterial, claiming that Softsoap Antibacterial "Kills 99% of germs," "Clinically proven to eliminate 99% of germs," and "Offers antibacterial protection."[3]

20.     Colgate's false and deceptive claims that Softsoap Antibacterial is more effective than ordinary liquid hand soap in that it is "clinically proven to eliminate 99% of germs" and "offers antibacterial protection" are reinforced on it webpage for Softsoap which states: "Goodbye germs.  Hello world,"  and "America's most trusted hand soap."[4]

21.     Colgate deceptively and unfairly implies that Softsoap Antibacterial's active ingredient − Triclosan − enables Softsoap Antibacterial to outperform other soap products.

22.     In addition, Colgate's consistent marketing and advertising campaign that Softsoap Antibacterial is "clinically proven to eliminate 99% of germs," deceptively implies that the product's purported superior effectiveness is backed by competent, credible and reliable clinical studies.

_____

[3]     *See* http://www.colgatecommercial.com/Softsoap®-brand-Aquatic-Splash™-Antibacterial-Foaming-Hand-Soap-01415.aspx. *See also* http://www.colgatecommercial.com/Softsoap®-brand-Antibacterial-Hand-Soap-with-Light-Moisturizers-01901.aspx.
[4]     *See* http://www.colgate.com/app/LatherUpForGoodHealth/US/EN/home.cwsp.

23.     Colgate's nationwide advertising campaign for Softsoap Antibacterial has been extensive and comprehensive.  Colgate has spent millions of dollars to convey the deceptive messages outlined above to consumers throughout the United States, including in the State of New Jersey.  Defendant conveyed and continues to convey deceptive claims about Softsoap Antibacterial through a variety of media, including television, newspapers, the internet, promotional placements, point-of-sale displays, and on Softsoap Antibacterial labels and packaging.

24.     Colgate's advertising and marketing campaign sends the unmistakably clear, but unconscionably deceptive and unfair message, that Softsoap Antibacterial is more effective at eliminating germs, protecting the consumer from germs, and thus preventing illness and promoting good health, than washing with ordinary liquid hand soaps that do not carry the risks associated with Triclosan.

25.     Colgate's advertising and marketing campaign is designed to cause consumers to buy Softsoap Antibacterial on the basis that it is more effective than washing with regular soap and water and, thus, is worth purchasing at all or is worth purchasing for a higher price than consumers would otherwise pay.  As a result of this false and misleading campaign, Colgate has elevated Softsoap Antibacterial to the number one seller in the antibacterial hand soap product category.

26.     But despite Colgate's claims and advertisements touting the superior effectiveness of Softsoap Antibacterial, Softsoap Antibacterial does not eliminate

12

more germs and is not any more effective than ordinary, at times less expensive, non-triclosan containing liquid hand soap.

27.     Each person who has purchased Softsoap Antibacterial has been exposed to Colgate's misleading advertising message multiple times, but has never been provided the well-known and critical information that washing with regular soap and water provides the same level of protection.  As a result of Colgate's false and misleading representations and omissions, consumers have paid more for Softsoap Antibacterial over traditional hand soaps.

**Triclosan and Recent Research and Discussion**

28.     Colgate's advertising message ignores the well-supported fact that washing with ordinary liquid hand soap is just as effective as washing with Softsoap Antibacterial regardless of Softsoap Antibacterial's Triclosan content.

29.     Colgate's claims about Softsoap Antibacterial's effectiveness and superiority are false, deceptive, unfair, and unconscionable because there is not sufficient, competent, and/or reliable scientific evidence and/or substantiation for Colgate's effectiveness and superiority claims concerning its Softsoap Antibacterial products.

30.     Specifically, Colgate has no competent, credible, and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the

entire body of relevant and reliable scientific evidence, to substantiate its claims regarding the superior effectiveness of Softsoap Antibacterial.

31.    Rather, numerous scientific studies have reached the opposite conclusion – that soaps containing Triclosan that are available to consumers, such as Softsoap Antibacterial, are no more effective than ordinary liquid hand soaps that do not contain Triclosan.

32.    For example, the Council on Scientific Affairs of the American Medical Association reported in 2002:

> Despite the recent substantial increase in the use of antimicrobial ingredients in consumer products, the effects of this practice have not been studied extensively. No data support the efficacy or necessity of antimicrobial agents in such products, and a growing number of studies suggest increasing acquired bacterial resistance to them. Studies also suggest that acquired resistance to the antimicrobial agents used in consumer products may predispose bacteria to resistance against therapeutic antibiotics, but further research is needed. Considering available data and the critical nature of the antibiotic-resistance problem, it is prudent to avoid the use of antimicrobial agents in consumer products.

*See* Litjen Tan, PhD, *et al.*, *Use of Antimicrobial Agents in Consumer Products, Abstract,* Archives of Dermatology 2002; 138:1082-1086 (August 2008).[5]

---

[5]    *See*, http://archderm.ama-assn.org/cgi/content/abstract/138/8/1082/

33.     Researchers from the University of Michigan, Columbia University, and Tufts University concluded that "Soaps containing triclosan within the range of concentrations commonly used in the community setting (0.1%-0.45% wt/vol) were no more effective than plain soap at preventing infectious illness symptoms and reducing bacterial levels on the hands." *See* Aiello, *et al., Consumer Antibacterial Soaps: Effective or Just Risky?*, Clinical Infectious Diseases Supplement Article, 2007:45:S137-47 (Suppl. 2) (2007).[6]

34.     Similarly, in April 2010, the FDA warned consumers in its Consumer Health Information publication that it "does not have evidence that triclosan in antibacterial soaps and body washes provides any benefit over washing with regular soap and water" and "does not have evidence that triclosan added to antibacterial soaps and body washes provides extra health benefits over soap and water."[7]

35.     In his April, 2010 letter to Ian Cook, the CEO and President of Colgate, Representative Edward J. Markey, chairman of the House Energy and

_____

[6]     *See,*
http://www.tufts.edu/med/apua/practitioners/infection_control_11_3141468025.pdf

[7]     *See* FDA Consumer Health Information, Triclosan: What Consumers Should Know (April 2010) at
http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM206222.pdf

Commerce Subcommittee on Energy and the Environment, stated: "Despite widespread use, there is little data to prove that products containing triclosan and triclocarbon are any more effective in protecting against disease transmission than ordinary soap and water with proper hand-washing techniques."[8]  In Representative Markey's "Triclosan Fact Sheet," he reports:  "Guidance provided by an FDA advisory panel in 2005 stated that antibacterial soaps and washes are no more effective at preventing illness than plain soap and water."[9]

36.     Despite this growing anti-triclosan consumer preference and the above mentioned studies, Colgate continues to sell and market Softsoap Antibacterial hand soaps.

37.     Moreover, despite the overwhelming scientific evidence contrary to Colgate's false claims regarding the superior effectiveness of Softsoap Antibacterial, Colgate continues to make these claims in order to induce consumers, including Plaintiff and the other class members, to purchase Softsoap Antibacterial at all or to have purchased Softsoap Antibacterial for a greater price than they otherwise would have paid.

---

[8]     *See*   http://markey.house.gov/images/img-413130238-0001.pdf.

[9]     *See*   http://markey.house.gov/docs/triclosan_information_final.pdf.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of

Civil Procedure on behalf of herself and others similarly situated, as members of a

class she preliminarily proposes be defined as follows:

> All New Jersey residents who purchased Antibacterial
> Softsoap within the statutory limitations period
> applicable (the "Class").

Excluded from the proposed Class are Defendant; any entity in which Defendant

has or had a controlling interest; any of Defendant's officers, directors, legal

representatives, heirs, successors, and assigns; Plaintiff's counsel and anyone

employed by Plaintiff's counsel; any Judge assigned to this action and his or her

immediate family; and anyone who timely requests exclusion from the Class.

39.     The Class is so numerous that joinder of all members is impracticable.

Plaintiff is informed and believes and thereon alleges that there are not less than

tens of thousands of consumers who purchased Antibacterial Softsoap in the state

of New Jersey.

40.     There are many common questions of law and fact involving and

affecting the parties to be represented.  These common questions of law or fact

predominate over any questions affecting only individual members of the Class.

Common questions include, but are not limited to, the following:

(a)     Whether Defendant engaged in deceptive and unfair business and

trade practices;

(b)     Whether Defendant knowingly or negligently concealed or omitted material information concerning Softsoap Antibacterial;

(c)     Whether the Class has been injured by virtue of Defendant's negligence, carelessness, and/or deceptive business practices and conduct;

(d)     Whether the Class is entitled to injunctive relief; and

(e)     Whether Defendant falsely and deceptively misrepresented in its advertisements and promotional materials, and other materials that Softsoap Antibacterial is more effective than ordinary liquid hand soap at killing germs.

41.    Plaintiff's claims are typical of the claims of the respective Class she seeks to represent, in that the named Plaintiff and all members of the proposed Class have purchased Softsoap Antibacterial.

42.    Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class actions and complex litigation as her counsel.

43.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief.

44.    Plaintiff avers that the prerequisites for class action treatment apply to this action and that questions of law or fact common to the Class predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action.  Plaintiff further states that the

18

interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of this Class will not be difficult.

## COUNT I

### (FOR VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J.S. § 56:8-1, ET SEQ. )

45.     Plaintiff repeats and realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

46.     Plaintiff brings this claim individually and on behalf of the Class as defined above.

47.     This Count arises under the New Jersey Consumer Fraud Act, N.J. Stat. §56:8-1, *et seq.*, and is brought on behalf of the Plaintiff and members of the Class pursuant to §§56:8-19 and 56:8-2.12 of the Act.

48.     Section 56:8-2 provides, in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

49.     Plaintiff and other members of the Class are consumers who purchased consumer goods – the Softsoap Antibacterial – pursuant to a consumer transaction for personal use and are, therefore, subject to protection under the New Jersey Consumer Fraud Act, N.J.S. §56:8-1, *et seq.*

50.     Defendant manufactured, sold, distributed and/or advertised the Softsoap Antibacterial and is subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

51.     The acts, practices, misrepresentations, concealments, and omissions of material facts by Defendant made in connection with the sale and advertisement of the Softsoap Antibacterial, and with the intent that others rely upon such concealment, suppression and omission, constitute unlawful practices within the meaning of the New Jersey Consumer Fraud Act.

52.     Defendant engaged in unlawful practices by marketing and selling the Softsoap Antibacterial as more effective than ordinary liquid hand soap at killing germs when in fact, Softsoap Antibacterial is not any more effective than ordinary and less expensive liquid hand soap.

53.     As a result of the use and employment by Defendant of the unlawful acts, Plaintiff and the other Class members have suffered an ascertainable loss of money or property and have been damaged thereby.

54.     Plaintiff and the other members of the Class would not have

purchased the Softsoap Antibacterial if Defendant had disclosed that the product is

not any more effective than ordinary and less expensive liquid hand soap.

55.     Under N.J.S. §§56:8-2.11, 56:8-2.12 and 56:8-19, Plaintiff and the

other Class members are entitled to a refund of all moneys acquired by Defendant

by means of the unlawful practices alleged above, as well as compensatory

damages, including treble damages, attorneys' fees, and cost of suit.

## COUNT II
### (Breach of Express Warranty)

56.     Plaintiff repeats and realleges each and every allegation contained

above, and incorporates by reference all other paragraphs of this Complaint as if

fully set forth herein.

57.     The Uniform Commercial Code §2-313 provides that an affirmation

of fact or promise made by the seller to the buyer which relates to the good and

becomes part of the basis of the bargain creates an express warranty that the goods

shall conform to the promise.

58.     New Jersey codified and adopted the provisions of the Uniform

Commercial Code governing the express warranty of merchantability in N.J. Stat.

Ann. §12A:2-313.

59.     As detailed above, Defendant manufactured, marketed and sold the

Softsoap Antibacterial through its advertising and marketing campaign as alleged

above.  Defendant's product packaging and labeling, and its advertising constitute express warranties which became the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class, on the one hand and Defendant, on the other hand.

60.     The Softsoap Antibacterial did not conform to these express representations because the Softsoap Antibacterial did not have attributes as expressly warranted.

61.     At the time that Defendant sold the Softsoap Antibacterial, Defendant knew the purpose for which the Softsoap Antibacterial was intended and expressly warranted that the Softsoap Antibacterial had superior attributes than traditional hand soap.

62.     Plaintiff and other members of the Class relied upon the representations and the superior knowledge and judgment of the Defendant to sell a product with the attributes as represented by Defendant to consumers.

63.     Defendant breached its express warranties in connection with the sale of the Softsoap Antibacterial to Plaintiff and other members of the Class.

64.     If notice is required, Plaintiff and the Class have adequately provided Defendant such notice through the filing of this lawsuit.  To date, Defendant has been named in approximately 8 lawsuits regarding the deceptive marketing of Softsoap Antibacterial.

65.     As a direct and proximate result of Defendant's breach of express

warranties, Plaintiff and other members of the Class have suffered damages.

## COUNT III

## (Unjust Enrichment)

66.     Plaintiff repeats and realleges each and every allegation contained

above, and incorporates by reference all other paragraphs of this Complaint as if

fully set forth herein.

67.     At all times relevant hereto, Defendant manufactured, produced,

marketed and/or sold Softsoap Antibacterial.

68.     Plaintiff and the members of the Class conferred a tangible benefit

upon Defendant, without knowledge that the Softsoap Antibacterial, represented as

a superior product over traditional hand soap, could not perform as promised and

has been widely criticized by government officials and scientists.  Defendant

accepted and retained the non-gratuitous benefits conferred by Plaintiff and

members of the Class with full knowledge and awareness that, as a result of

Defendant's unconscionable wrongdoing, Plaintiff and members of the Class were

not receiving the product of higher quality, nature, fitness or value that had been

represented by Defendant, and which reasonable consumers would have expected.

69.     Retaining the non-gratuitous benefits conferred upon Defendant by

Plaintiff and members of the Class under these circumstances made Defendant's

retention of the non-gratuitous benefits unjust and inequitable.

70.     Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and hereby seek, disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits in a manner established by the Court.

**WHEREFORE, PLAINTIFF PRAYS FOR RELIEF AS FOLLOWS:**

71.     That this action be certified as a class action on behalf of the proposed Class of all persons who purchased one or more Softsoap Antibacterials, that the named Plaintiff be designated as representative of the Class and that named counsel be designated Class Counsel;

72.     Monetary damages and/or restitution, as appropriate, including but not limited to, treble damages and a full refund of all costs associated with the purchase of the Softsoap Antibacterials;

73.     Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Class has an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

74.     Punitive damages;

75.     Awarding a declaratory judgment with damages awarded as supplemental relief;

76.     Awarding all costs, including experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and

24

77.   Such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues so triable.

DATED:  December 1, 2011          KAPLAN FOX & KILSHEIMER LLP


                                    s/William J. Pinilis
                                  _____
                                  William J. Pinilis
                                  KAPLAN FOX & KILSHEIMER LLP
                                  160 Morris Street
                                  Morristown, New Jersey 07960
                                  Telephone:  973-656-0222
                                  Facsimile:  973-401-1114

                                  Laurence D. King
                                  Linda M. Fong
                                  Mario Choi
                                  KAPLAN FOX & KILSHEIMER LLP
                                  350 Sansome Street, Suite 400
                                  San Francisco, CA  94104
                                  Telephone:  415-772-4700
                                  Facsimile:  415-772-4707